UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEIMIN CHEN,<br>for Himself, as a Private Attorney<br>General, and/or On Behalf Of All<br>Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LAMPS PLUS, INC.,<br>and DOES 1-20, inclusive,<br><br>Defendants. | No. 2:19-cv-00119-MJP<br><br>**PLAINTIFF'S UNOPPOSED<br>MOTION FOR PRELIMINARY<br>APPROVAL OF CLASS ACTION<br>SETTLEMENT**<br><br>NOTE ON MOTION CALENDAR:<br>FEBRUARY 21, 2020 |

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

# I.  INTRODUCTION

Plaintiff Weimin Chen moves under Federal Rule of Civil Procedure 23(e) for preliminary approval of a proposed class action settlement entered into with Defendant Lamps Plus, Inc. ("Lamps Plus" or "Defendant"). The Settlement Agreement[1] between Plaintiff Chen and Lamps Plus was reached after nearly a year of litigation, discovery, and negotiation, including a mediation supervised by a neutral mediator.

Under the Settlement Agreement, Lamps Plus will award each Authorized Claimant his or her choice of either: (a) one Voucher with a value of $20 that may be used for the purchase of any item at a Lamps Plus retail location or through Lamps Plus's website; or (b) one settlement check in the amount of $14. Settlement Agreement ("SA") § 2.2.1. Additionally, Lamps Plus has agreed to several material practice changes. Within a reasonable time, Lamps Plus will: (1) revise its in-store product labels and website descriptions to remove the "Compare At" terminology on its price tags and pricing placards for its proprietary products in Washington state; (2) remove the "Low Price Guarantee" language and link on website product pages for Lamps Plus house-brand and/or exclusive products; and (3) display signage in its Washington state retail stores at or near the entrance to each store and in a location where other store policies are posted describing the meaning of "Comparable Value" and/or other similar language to convey the price at which similar goods are offered for sale if Lamps Plus chooses to use such terminology. SA § 2.2.3. Lamps Plus has also agreed to bear all costs of settlement administration, including providing notice. SA § 2.2.8. Finally, Lamps Plus has agreed to provide up to $300,000 to cover any award of attorneys' fees and costs to Class Counsel and up to $5,000 to cover any incentive award to Plaintiff for his time and commitment to the action. SA §§ 2.2.4, 2.2.5. In exchange, Plaintiff and all Class Members who do not timely opt out of

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as set forth in the Settlement Agreement and Release, which is attached as Exhibit 1 to the Declaration of Daniel Hattis in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Hattis Decl."). The Settlement includes, as exhibits, the proposed Preliminary Approval and Provisional Class Certification Order (Ex. A), Full Notice (Ex. B), Email Notice (Ex. C), Mail Notice (Ex. D), Claim Form Version 1 (Ex. E), Claim Form Version 2 (Ex. F), proposed Order Granting Final Approval of Class Settlement (Ex. G), and proposed Final Judgment (Ex. H). Hattis Decl. § 20.

the settlement will release Lamps Plus from liability for all Class Released Claims asserted in this litigation and any claims related to or arising out of this Action. SA § 2.2.9.

Plaintiff moves the Court to: (1) preliminarily approve the Settlement Agreement as fair, reasonable, and adequate; (2) preliminarily approve the form, manner, and content of the proposed notices to the Class; (3) set the date and time of the Final Fairness Hearing; (4) provisionally certify the Class under Rule 23(b)(3) and (e) for settlement purposes; (5) stay all proceedings in the Action until the Court renders a final decision on approval of the Settlement and sets a briefing schedule for the papers in support of the Final Order; (6) conditionally appoint Plaintiff Weimin Chen as Class Representative for settlement purposes; and (7) conditionally appoint Hattis & Lukacs as Class Counsel for settlement purposes.

Plaintiff requests that the Motion, which Lamps Plus does not oppose, be granted. The Settlement meets all of the standards for preliminary approval. The information provided is sufficient to permit the Court to provisionally certify the Settlement Class under Rule 23 and direct the Parties to have notice disseminated. The Notice Program—consisting of individualized email notice, mail notice where necessary, and a website maintained by the Settlement Administrator—is the best practicable notice and comports with both Rule 23 and due process. For the reasons below, the Court should grant the motion and authorize notice of the proposed settlement to be disseminated to proposed class members.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A.     History of the Litigation

Plaintiff Weimin Chen filed this class action in the Superior Court of Washington for King County on January 4, 2019. (Dkt. 1-1). On January 28, 2019, Defendant Lamps Plus subsequently removed this action to the United States District Court for the Western District of Washington. (Dkt. 1).

In his complaint, Plaintiff Chen alleges that Lamps Plus violated the Washington Consumer Protection Act, RCW 19.86 ("CPA"), by advertising fictitious "Compare At" prices on its proprietary and exclusive products ("Exclusive Products"), which are typically over 30% higher than the actual selling prices. Complaint ¶ 2. Plaintiff Chen alleges that, under

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Washington law, a "Compare At" price must be the price at which other retailers are offering that same product for; thus, the "Compare At" prices are false, deceptive, or misleading because Lamps Plus's Exclusive Products are never sold at the higher "Compare At" price by other retailers since the products are exclusive to Lamps Plus. Complaint ¶¶ 3–4. Plaintiff Chen brought this action to recover damages under the CPA and injunctive relief. Complaint ¶¶ 86–105. On February 4, 2019, Lamps Plus filed its Answer and denied liability of any kind. (Dkt. 8).

**B.     Plaintiff's Counsel Thoroughly Investigated Claims Against Lamps Plus.**

Prior to filing this Action, Plaintiff's Counsel conducted a thorough investigation into Lamps Plus's pricing practices. Hattis Decl. ¶ 10. Plaintiff's Counsel has invested considerable time and expense into its Rule 11 pre-filing investigations. Specifically, Plaintiff's Counsel has created a bespoke evidence preservation software which "scrapes," stores, and analyzes the prices at which various retailers offer their products for sale online and captures daily screenshots of the product webpages. Hattis Decl. ¶ 9. Using this software, Plaintiff's Counsel tracked over five hundred Lamps Plus products on a daily basis for a period of seven months prior to filing this Action. Hattis Decl. ¶ 10. Additionally, Plaintiff's Counsel visited a Lamps Plus store in Washington to document and record photographic evidence of Lamps Plus's in-store advertising, discounting, pricing, and sales practices. Hattis Decl. ¶ 13. This in-store evidence demonstrated that Lamps Plus's online and in-store advertising and pricing practices were virtually identical. Hattis Decl. ¶ 13. Plaintiff's Counsel brought this action because the data supported Plaintiff's claims.

After filing this Action, Plaintiff's Counsel continued monitoring Lamps Plus's pricing practices through the use of their product-tracking software. Hattis Decl. ¶ 14. Plaintiff's Counsel also engaged in meaningful discovery, requiring Lamps Plus to produce nearly 6,000 pages of documents relating to its online and in-store advertising, discounting, pricing, and sales practices. Hattis Decl. ¶ 15. Lamps Plus also produced hundreds of thousands of sales transaction records regarding the purchases of approximately 95,000 customers in the state of Washington. *Id.* Plaintiff's Counsel reviewed the entirety of these documents in anticipation of

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

several impending depositions that were to take place absent this settlement agreement. *Id.*
Through this discovery, the Parties were able to better understand the strengths and weaknesses
of Plaintiff's claims and it allowed the Parties to more readily reach an agreement to settle the
claims. *Id.*

### C. Negotiations and Settlement

The proposed settlement is the result of good faith, arm's-length negotiations. In late
February 2019, the Parties began discussing possible settlement. Hattis Decl. ¶ 16. On March
18, 2019, the Parties participated an in-person mediation in Los Angeles before Robert A.
Meyer of JAMS. Hattis Decl. ¶ 17. Prior to the mediation, the Parties exchanged detailed
confidential mediation statements setting forth their respective positions as to liability and
damages. Hattis Decl. ¶ 17. While the Parties were unable to reach an agreement at the
mediation, progress was made. Over the next six months, the Parties continued to engage in
extensive negotiations by email and phone, ultimately reaching an agreement on the core terms
of monetary and injunctive relief necessary to resolve the case on a class-wide basis on August
9, 2019. Hattis Decl. ¶ 18. The Parties did not agree upon attorneys' fees, costs, or expenses
prior to reaching an agreement on the essential terms of the settlement. Hattis Decl. ¶ 18. The
Parties then formalized the terms of their proposed settlement in a full settlement agreement,
which is attached as Exhibit 1 to the Declaration of Daniel Hattis.

## III. TERMS OF THE PROPOSED SETTLEMENT

### A. The Settlement Class

For settlement purposes only, the Parties agree that the Court should certify the
following "Settlement Class" under Rule 23(b)(3), defined as:

All Lamps Plus customers who purchased in the State of Washington from a Lamps Plus retail
store or the Lamps Plus website from January 4, 2015, through the date of preliminary
approval, one or more Lamps Plus branded, trademarked or otherwise proprietary merchandise
which Lamps Plus advertised with a "Compare" or "Compare At" reference price. Excluded
from the Class are Lamps Plus's Counsel, Lamps Plus's officers, directors and employees, and
the judge presiding over the Action.

SA § 2.1.9.

The Class is believed to include approximately 95,000 individuals. Hattis Decl. ¶ 15.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 5
19-CV-00119-MJP

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

**B.    Benefits to the Settlement Class**

Under the Settlement Agreement, Lamps Plus will award each Class Member who submits a complete, valid, and sufficient Claim Form on or before the Claim Response Deadline his or her choice of either: (a) one Voucher with a value of $20 that may be used for the purchase of any item at a Lamps Plus retail location or through Lamps Plus's website; or (b) one settlement check in the amount of $14. SA §§ 2.2.1, 2.3.4.

Lamps Plus has also agreed to several material practice changes. Within a reasonable time, Lamps Plus will revise its in-store product labels and website descriptions to remove the "Compare At" terminology on its price tags and pricing placards for its proprietary products in Washington state. SA § 2.2.3. Lamps Place may use terminology such as "Comparable Value" and/or other similar language to convey the price at which similar goods are offered for sale. *Id.* Moreover, within a reasonable time, Lamps Plus shall remove the "Low Price Guarantee" language and link on website product pages for Lamps Plus house-brand and/or exclusive products (although the "Low Price Guarantee" may remain with respect to non-exclusive products). *Id.* Lamps Plus will also display signage in its Washington state retail stores describing the meaning of "Comparable Value" at or near the entrance to each store and in a location where other store policies are posted. *Id.*

**C.    Claim Form**

Class Members who wish to receive either a Voucher or $14 in the form of a check, must submit complete, valid and sufficient Claim Forms on or before the Claim Response Deadline in order to be included in the distribution of the Vouchers or the settlement checks. SA § 2.3.4. There will be two versions of the Claim Form—one for those who receive an Email Notice and one for those who do not receive an Email Notice or who learned about the Settlement in some other manner. *Id.* Each version of the Claim Form is a single page long and only requires Class Members to provide very basic information. *See* SA Ex. E, Ex. F. No additional documentation or proof of purchase is required.

Class Members who receive an Email Notice may return Claim Form Version 1 (Exhibit E of the Settlement Agreement) in which the Class Member will be required to enter:

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

(1) his/her name; (2) the verification code included on the applicable Email Notice; (3) his/her address; (4) a selection of either a Voucher or $14 settlement check; and (5) check a box that provides that the claim is true and correct under penalty of perjury. SA § 2.3.4(a).

Class Members who do <u>not</u> receive an Email Notice (or who have misplaced such notice) or who learned about the Settlement in some other manner must return Claim Form Version 2 (Exhibit F of the Settlement Agreement) in which the Class Member will be required to enter: (1) his/her name; (2) his/her address; (3) a selection of either a Voucher or $14 settlement check; (4) the date of their purchase from Lamps Plus; (5) the location of the store (or online) where the purchase was made; (6) a description of the product purchased; and (7) check a box that provides that the claim is true and correct under penalty of perjury. SA § 2.3.4(b).

Based on their experience with the settlement of similar consumer fraud class actions, Class Counsel believes that the simplicity of the Claim Form will increase participation from Class Members. Hattis Decl. ¶ 22.

### D. Proposed Notice Plan

Lamps Plus has agreed to bear the costs of providing notice of the Settlement to the Class and the costs associated with independent administration of benefits by the Claims Administrator. SA §§ 2.2.8. The Claims Administrator will be Epiq Class Action & Claims Solutions, Inc., who is familiar with Lamps Plus's systems and procedures and which Lamps Plus anticipates will make the process more accurate and efficient. SA § 2.1.7.

Subject to the Court's approval, the Parties propose to individually notify by email, or by mail where necessary, each Class Member that Lamps Plus is able to identify through reasonable efforts. SA §§ 2.3.2(b), (c). Additionally, the Parties will have the Settlement Administrator establish a Settlement Website to provide information about the Settlement. SA § 2.3.2(a). Class Members will be able to file claims both electronically and by mail. During the claims period, Class Members that have not filed claims will receive at least one reminder notice. SA § 2.3.2(b).

### 1. Email Notice

Lamps Plus shall use reasonable efforts to identify those Lamps Plus customers who may be Class Members and for whom it has a valid email address. SA § 2.3.2(b). Through the Claims Administrator, for those Class Members for whom Lamps Plus has a valid email address, Lamps Plus will send an Email Notice to such Class Members. *Id*. The Email Notice will be substantially similar to the form attached as Exhibit C to the Settlement Agreement and will provide the web address of the Settlement Website and an email and mailing address to contact the Claims Administrator. *Id*. Lamps Plus, through the Claims Administrator, will issue the initial the Email Notices on or before thirty (30) calendar days after entry of the Preliminary Approval Order and the second round of Email Notices approximately thirty (30) days thereafter. *Id*.

### 2.  Direct Mail Notice

Lamps Plus shall use reasonable efforts to identify those Lamps Plus customers who may be Class Members and for whom it has only a valid postal mailing address (and not an email address). SA § 2.3.2(c). Through the Claims Administrator, for those Class Members for whom Lamps Plus has a valid mailing address only, Lamps Plus will send a Mail Notice via the U.S. Postal Service to such Class Members. *Id*. The Mail Notice will be substantially similar to the form attached as Exhibit D to the Settlement Agreement and will provide the web address of the Settlement Website and an email and mailing address to contact the Claims Administrator. *Id*. Lamps Plus, through the Claims Administrator, will provide the Mail Notice on or before thirty (30) calendar days after entry of the Preliminary Approval Order. *Id*.

### 3.  Settlement Website

The Claims Administrator will post the Full Notice on an Internet website ("Internet Posting") specifically created for the settlement of this Action. SA § 2.3.2(a). The Internet Posting will be at the URL www.LampsPlusSettlementWashington.com. *Id*.  The Full Notice will be substantially similar to the form attached as Exhibit B to the Settlement Agreement. *Id*. The Internet Posting will also contain the Claim Forms, Complaint, Settlement Agreement, and Preliminary Approval Order. *Id*. Within seven (7) court days of when Class Counsel files a motion for attorneys' fees and costs, the Internet Posting will also post the fees and costs

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 8
19-CV-00119-MJP

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

motion. *Id.* The Internet Posting shall be operative starting on or before twenty-five (25) calendar days after entry of the Preliminary Approval Order. *Id.* The Internet Posting shall remain active at least until the Final Settlement Date. *Id.*

### E. Opt-Out and Objection Rights

All forms of notice explain both: (1) the procedure by which a Class Member may exclude him or herself from the Settlement prior to the Opt-Out Deadline; and (2) the procedure by which a Class Member may object to the Settlement or Class Counsel's applications for awards of attorneys' fees, expenses, or the incentive award to Plaintiff prior to the Objection Deadline. *See* SA Ex. C. The proposed Opt-Out and Objection Deadlines are ninety (90) days following the first distribution of the Email Notice. SA § 2.1.25.

### F. Release of Claims

Under the Settlement Agreement, upon final approval by the Court, Class Members who do not timely and validly exclude themselves from the Settlement shall provide a full release to Defendant, as follows:

> [A]ll manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which the Class Members have or may have, arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint, or any preceding version thereof filed in the Action, including, but not limited to, any and all claims related in any way to the advertisement of reference prices by Lamps Plus, Inc. or any of its subsidiaries or affiliates

SA §§ 2.1.11, 2.2.9.

In addition to the releases made by the Class Members set forth in Section 2.2.9 above, effective upon entry of the Judgment, Plaintiff Chen shall also provide Defendant a general release of all past and present claims, known or unknown. *See* SA §§ 2.2.9, 2.2.10.

The Parties submit that the Class Released Claims are appropriate as they are narrowly tailored to the claims at issue in this Action, limited to only those claims that arose during the pendency of this Action, and do not release any claims for which Class Members are not receiving consideration.

### G. Attorneys' Fees and Costs, Administration Expenses, and Incentive Award

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Separate from the monetary relief available to all claiming Settlement Class Members, Lamps Plus also agrees to pay the entire cost of settlement administration and class notice. These costs will not affect the amount available to Class Members. Additionally, Lamps Plus agrees to pay up to $305,000 to cover: (1) any Court-approved incentive award to Plaintiff, not to exceed $5,000; and (2) any Court-approved attorneys' fees, costs and expenses, not to exceed $300,000. SA §§ 2.2.4, 2.2.5. The effectiveness of the Settlement Agreement is not contingent on the Court's awarding of the full amounts of the requested incentive award or attorneys' fees, costs, or expenses. SA § 2.2.6.

## IV. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A. Standard for Preliminary Approval of the Settlement

The Ninth Circuit recognizes the "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992). The strong preference for class action settlements is precipitated by the overwhelming uncertainties of the outcome, expense, management, and difficulties in proof inherent in class action lawsuits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").

Approval of a class action settlement takes place over three stages. "First, the parties present a proposed settlement asking the Court to provide 'preliminary approval' for both (a) the settlement class and (b) the settlement terms." *Rinky Dink Inc. v. Electronic Merchant Systems Inc.*, No. C13-1347, 2015 WL 11234156 *1 (W.D. Wash. Dec. 11, 2015). "Second, if the court does preliminarily approve the settlement and class, (i) notice is sent to the class describing the terms of the proposed settlement, (ii) class members are given an opportunity to object or opt out, and (iii) the court holds a fairness hearing at which class members may appear and support or object to the settlement." *Id.* "Third, taking account of all of the information learned during the aforementioned processes, the court decides whether or not to

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

give final approval to the settlement and class certification." *Id*. At the final approval stage, the court considers the settlement in light of a non-exhaustive list of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of [sic] the proposed settlement.

*Hanson v. MGM Resorts Int'l*, No. 16-CV-001661-RAJ, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018).

At the preliminary approval stage, the focus is just on whether the proposed settlement is "within the range of possible judicial approval." *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM JMA, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009); *Rinky Dink Inc.*, 2015 WL 11234156, at *4. Accordingly, the court need not scrutinize every detail of the settlement at this juncture, since "class members will subsequently receive notice and have an opportunity to be heard" at the time before final approval. *In re M.L. Stern*, 2009 WL 995864, at *3.

The Court's standard inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)). Accordingly, the court does not have "the ability to delete, modify or substitute certain provisions." *Id*. (citing *Officers for Justice*, 688 F.2d at 630). In other words, the "settlement must stand or fall in its entirety." *Id*.

Pursuant to the newly amended Rule 23(e), the Court may grant preliminary approval and direct notice to the class, if the plaintiff has shown "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)[.]" Fed. R. Civ. P. 23(e)(1)(B) (eff. Dec. 1, 2018). Approval under amended Rule 23(e)(2) requires that the settlement be fair, reasonable, and adequate, taking into consideration the following factors: (1) whether "the class representatives and class counsel have adequately represented the class"; (2) whether the settlement "was

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

negotiated at arm's length"; (3) whether "the relief provided for the class is adequate"; and (4) whether the settlement "treats class members equitably relative to each other." *Id.* (e)(2)(A)-(D). These factors are substantially similar to those that were already considered by courts in the Ninth Circuit; the 2018 amendment merely established a uniform set of core approval factors that the Advisory Committee Note states "should always matter to the decision" of the district court as to whether to approve the proposal. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. As such, Plaintiff will predominantly focus on the amended Rule (23)(e) factors for purposes of preliminary approval.

For the reasons set forth below, the proposed Settlement is fundamentally fair, adequate, and reasonable—falling squarely into the range of preliminary approval.

**B.    The Settlement is Fair, Reasonable, and Adequate.**

**1.    The Settlement Proposal was Negotiated at Arm's Length.**

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625). Perhaps the most critical inquiry to assist the court is determining whether the settlement is "the product of an arms-length, non-collusive, negotiated resolution." *Id.* If the answer is yes, courts will presume the settlement is fair and reasonable. *Spann II*, 314 F.R.D. at 324. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Federal Express Corp.*, Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Here, there is no evidence of collusion or fraud. Rather, the Settlement Agreement was reached only after meaningful discovery, an in-person mediation session before Robert A. Meyer of JAMS, and months of continued negotiations via email and phone. Hattis Decl. ¶¶ 17, 18. Moreover, both Parties were represented by counsel highly experienced in complex class litigation, which allowed for careful consideration of all strengths and weaknesses in order to achieve such an efficient resolution. Hattis Decl. ¶¶ 5–7. Both Parties were well-versed with the relevant law, the challenges present in calculating damages on a class-wide basis, and the risks

of continued litigation and recovery. Accordingly, all evidence indicates that this Settlement was <u>not</u> "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann II*, 314 F.R.D. at 324–25.

### 2. The Settlement Falls Within the Range of Possible Judicial Approval Because the Value of the Settlement Benefits are Significant in Light of the Risks of Continued Litigation.

This Settlement provides significant relief to the Class and falls within the range of possible judicial approval. "To determine whether a settlement falls within the range of possible approval a court must focus on substantive fairness and adequacy, and consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Singh v. Roadrunner Intermodal Servs., LLC*, 2018 WL 2412325, at *6 (E.D. Cal. May 29, 2018) (quotations omitted). "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). "Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *12 (C.D. Cal. 2010). Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney*, 151 F.3d at 1242.

When considering whether "the relief provided for the class is adequate," amended Rule 23(e)(2)(C) requires the Court to take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv) (eff. Dec. 1, 2018).

### a. The Relief Provided to the Settlement Class is Substantial.

The Settlement provides substantial relief to the Settlement Class. Class Members who submit claims will have the option of receiving either: (a) a $14 check, or (b) a $20 voucher to

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 13
19-CV-00119-MJP

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

use toward the purchase of any item from Lamps Plus. SA § 2.2.1. And, significantly, Lamps Plus has further agreed to cease all of the allegedly deceptive practices set forth in Plaintiff's Complaint: (1) Lamps Plus will no longer use the phrase "Compare At" on price tags or signage in its stores or on its website; (2) Lamps Plus will remove the "Low Price Guarantee" language and link on its website product pages for any of its Lamps Plus exclusive products; and (3) Lamps Plus will display signage at or near the entrance to each of its Washington state retail stores and in a location where other store policies are posted that explains the meaning of its new pricing term, "Comparable Value." SA § 2.2.3.

This relief compares favorably with settlements obtained in similar types of consumer protection cases. *See, e.g., Manouchehri v. Styles for Less, Inc.*, Case No. 14-cv-2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (approving TCPA settlement of $10.00 cash or $15.00 voucher for class members); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 11-2261, Dkt. 97 (S.D. Cal. 2013) (providing for a $20 voucher to each claiming class member, which could be redeemed for $15 cash after nine months); *Kazemi v. Payless Shoesource, Inc.*, No. 09-05142, Dkt. 94 (N.D. Cal. 2012) (providing for a $25 voucher to each claiming class member); *Skuro v. BMW of North America, LLC,* 10–cv–8672 GW, Dkt. No. 56 (C.D.Cal. Aug. 28, 2012) (settlement of $7.50 per class member); *Marenco v. Visa Inc.,* 10–cv–8022 DMG, Dkt. No. 54 (C.D.Cal. Nov. 30, 2011) (settlement of $30 per class member); *Batmanghelich v. Sirius XM Radio, Inc.,* 09–cv–9190 VBF, Dkt. No. 89 (C.D.Cal. Sept. 15, 2011) (settlement of $5.77 per class member); *Nader v. Capital One Bank, N.A.,* 12–cv–01265 DSF, Dkt. No. 170 (C.D.Cal. Nov. 17, 2014) (settlement of $2.73 per class member); *Cohorst v. BRE Properties, Inc. et. al.,* 10–cv–2666 JM, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) (settlement of $4.70 per class member); *Knell v. FIA Card Services,* 12–cv–00426 WVG, Dkt. No. 79 (S.D.Cal. Aug. 15, 2014) (settlement of $0.75 per class member); *Hoffman v. Bank of America, N.A.,* 12–cv–00539 DHB, Dkt. No. 67 (S.D.Cal. Nov. 6, 2014) (settlement of $1.86 per class member); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1249 (C.D. Cal. 2016) (approving class settlement in false discount case representing between 5.5% and 10.7% of possible damages); *In re Toys R Us-Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

F.R.D. 438, 453-54 (C.D. Cal. 2014) (approving settlement providing for 3% of possible recovery); *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, at *6 (S.D. Cal. 2014) (granting approval where settlement was 1.7% of possible recovery); *In re LDK Solar Sec. Litig.*, 2010 WL 3001384, at *2 (N.D. Cal. 2010) (granting final approval where settlement was 5% of estimated damages).

Significantly, many of the above cases were brought under statutes, like the Telephone Consumer Protection Act (TCPA), that provide clear standards for what constitutes a violation and specific statutory damages for each violation. As detailed below, Plaintiff enjoys neither of these benefits under the CPA, yet he has obtained relief akin to settlements in cases enjoying both of these benefits.

### b. The Risks, Costs, and Delay of Continued Litigation are Significant

The relief obtained in this Settlement must also be considered in light of the significant risks of continued litigation—which there are many. *See Hanson*, 2018 WL 3630284 at *4–5 (finding that uncertain outcome of litigated class certification motion, difficulty of proving damages, and limited legal precedent on unique issues posed risks to plaintiff's case and weighed in favor of settlement approval). In fact, at every stage of the litigation Plaintiff would be tasked with overcoming novel legal hurdles that have not yet been fully addressed by Washington courts, with near certain appeals regardless of the outcomes.

First, there is a risk that the case would not be certified as a class action. In these types of consumer fraud cases, defendants frequently take the position that individual issues predominate and should foreclose class certification. Specifically, defendants argue that the causation element of the CPA necessarily requires an individualized inquiry into the materiality of the defendant's alleged misrepresentations and the degree of reliance thereon by each individual class member. *See Kelley v. Microsoft Corp.*, No. C07-475 MJP, 2011 WL 13353905, at *3 (W.D. Wash. May 24, 2011) (denying class certification after determining that causation in this case would require a fact-intensive, individual inquiry into the motivations of each consumer); *Blough v. Shea Homes, Inc.*, No. 2:12-CV-01493 RSM, 2014 WL 3694231, at

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

*12 (W.D. Wash. July 23, 2014) (holding that, "[w]hile causation difficulties need not destroy class certification for a consumer protection action premised on greater uniformity among class members, in this case they threaten to overwhelm its merits."). While Plaintiff's Counsel believes that these arguments are overstated and inapplicable to the facts of this case, they are far from frivolous and would no doubt be heavily disputed, with certification by no means guaranteed.

Second, even if certified, there is a risk that Plaintiff would not prevail on the merits. There is no Washington case law directly addressing whether Lamps Plus's reference price advertising and sales practices and policies constitute deceptive acts or practices under the CPA. Plaintiff believes that Lamps Plus's practices would certainly fall under the purview of the CPA, and Washington courts would come to the same conclusion as other courts have in interpreting the meaning of "Compare At." *See , e.g., People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1081 (2017) ("On their face, the words 'compare' or 'compare at,' without further qualification, communicate to the reader that the price being compared is for the same, not a different item."). Nevertheless, by virtue of being unknown and untested under Washington law, this necessarily injects additional risk into the case.

Third, and perhaps most significant, is the risk that Plaintiff could win class certification and successfully prove liability at trial only to recover no monetary benefit for the class due to an inability to prove class-wide damages. In similar deceptive pricing cases, defendants frequently posit arguments for why damages either cannot be shown or simply do not exist. For example, defendants often contend that damages do not exist because there is no difference between the amount paid for, and the value of, the goods that the consumer received.

These arguments have some support, with courts around the country struggling to determine what the appropriate calculus of damages ought to be. *See, e.g., Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543-YGR, 2017 WL 1957063, at *8 (N.D. Cal. May 11, 2017) (rejecting on summary judgment plaintiffs' claim for damages flowing from an alleged false discount, and dismissing assertions that plaintiffs and the class were entitled to either a full refund, the value of the promised discount, or disgorgement of profits). And, again,

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 16
19-CV-00119-MJP

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Washington courts have yet to address this question on how to calculate damages of this nature.

Of course, that is not to say that there is no appropriate form of damages—to hold otherwise would ostensibly vitiate the CPA in this realm of deceptive practices. But, because of the lack of precedent, this issue of damages would almost certainly be heavily contested if Plaintiff were to continue litigating the case, most likely resulting in an appeal or a certification to the Washington Supreme Court to resolve the question. Thus, even though Plaintiff is confident that there exists some form of measuring damages in this context under the CPA, the degree of uncertainty still supports preliminary approval of the proposed Settlement Agreement.

Finally, the Court must consider the substantial, near-certain risk that continued litigation would result in significant additional costs and delay. *See, e.g., Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."). Each of the above issues would necessarily require substantial time and resources to fully litigate. Moreover, the fact that Washington courts have not addressed many of these issues would almost certainly result in appeals by whichever side received an adverse judgment. In contrast, the Settlement provides an immediate, guaranteed, and concrete benefit to the entire Class, eliminating these risks entirely. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (attendant risks favor settlement where both sides face significant uncertainty).

**c.**      **The Proposed Method of Distributing Relief to the Settlement Class is Fair and Effective**

Within sixty (60) days of the Final Settlement Date, Lamps Plus, through the Claims Administrator, shall distribute to all Class Members who have timely submitted a complete, valid, and sufficient Claim Form their respective choice of either a $20 Voucher or $14 in the form of a check. SA §§ 2.2.2, 2.3.4. There is no fixed settlement fund capping relief—*all* Class Members who submit a valid Claim Form will receive their reward choice regardless of how many Class Members file a Claim. This approach is straightforward and treats all Claimants

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 17
19-CV-00119-MJP

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

identically.

There will be two versions of the Claim Form—one for those who receive an Email Notice and one for those who do not receive an Email Notice or who learned about the Settlement in some other manner. § 2.3.4. Each version of the Claim Form is a single page long and only requires Class Members to provide very basic information: his or her name and address, preference of either a Voucher or a $14 settlement check, and either a verification code if the Class Member received an Email Notice or a description and date of purchase of the Lamps Plus product that the Class Member purchased. *See* SA § 2.3.4(a), (b); *see also* SA Ex. E, Ex. F. No additional documentation or proof of purchase is required.

Based on their experience with the settlement of similar consumer fraud class actions, Class Counsel believes that the simplicity of the Claim Form will increase participation from Class Members. Hattis Decl. ¶ 22.

### d. The Requested Attorneys' Fees and Costs Are Reasonable

The Settlement Agreement requires that any award for payment of attorneys' fees, expenses, and costs is subject to proper motion to, and approval by, the Court. Class Counsel will apply to the Court for an incentive award to Plaintiff (not to exceed $5,000), and for an award of no more than $300,000 for attorneys' fees, costs, and expenses. SA §§ 2.2.4, 2.2.5. This amount is less than Class Counsel's raw lodestar. Hattis Decl. ¶ 12.

Importantly, the Parties first agreed to the essential terms of the Settlement before negotiating attorneys' fees, costs, and expenses. Hattis Decl. ¶ 18. No less than thirty days prior to the hearing on whether the Court should grant final approval to the Settlement, Plaintiff will submit a motion for attorneys' fees, expenses, and costs. The Settlement Website will post Plaintiff's fees and costs motion within seven (7) court days after it is filed. SA § 2.3.2(a). Settlement Class Members that have objected to the Settlement by the Objection Deadline will have an opportunity to file a brief in response to Class Counsel's request for attorneys' fees, expenses, and costs. SA § 2.3.7. Thus, all the considerations under Rule 23(e)(2)(C) support preliminary approval.

### C. Class Members Are Treated Equitably Relative To Each Other.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

The Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement Agreement authorizes Plaintiff to seek an incentive award in an amount no greater than $5,000 for his service to the Class in bringing and pressing the lawsuit. SA § 2.2.4. Importantly, Plaintiff's incentive award is to be paid separate and apart from the Class award, and any reduction of the incentive award by the Court shall not affect the rights and obligations under the Settlement. SA § 2.2.6. The Parties negotiated this aspect of the Settlement Agreement only after reaching an agreement on all other material terms of the settlement. Hattis Decl. ¶ 19. In all other respects, the Settlement Agreement treats all Class Members, including Plaintiff, identically and gives all Class Members the same opportunity to receive payments using the same distribution method. *See* SA § 2.3.4.

The Ninth Circuit recognizes that incentive awards given to named plaintiffs are "fairly typical" in class actions. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards serve "to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59. In evaluating whether the Settlement grants preferential treatment to Plaintiff, "the court must examine whether there is a 'significant disparity between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328–29 (C.D. Cal. 2016) ("*Spann II*") (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)). In arriving at such determination, courts will consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

Here, the requested award is unlikely to create a conflict of interest between Plaintiff and absent Class Members because the Settlement Agreement will remain in full force and effect, notwithstanding any reduction of the awards. SA § 2.2.6; *Spann II*, 314 F.R.D. at 328–29. The requested incentive award was not predicated on the existence of any special treatment

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

or promise from Class Counsel. Hattis Decl. ¶ 19. The basis for such award is purely to compensate Plaintiff for his time and efforts in initiating the lawsuit, staying abreast of all aspects of the litigation, cooperating in discovery, and fairly and adequately protecting the interests of the absent class members. Hattis Decl. ¶ 19. Thus, the award is purely an incentive award and does not constitute preferential treatment.

## V. PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

At the preliminary approval stage, the Court's threshold task is to determine whether the proposed class satisfies the Rule 23(a) requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, and the requirements set forth in Rule 23(b)(3). *See Gragg v. Orange Cab Co.*, No. C12-0576-RSL, 2014 WL 794266, at *1 (W.D. Wash. Feb. 27, 2014). Here, when ruling on class certification in the settlement context, the court need not explore the issue of manageability, "for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, provisional certification of the proposed Class for purposes of the Settlement is warranted because Plaintiff satisfies all requirements set forth in Rule 23.

### A. The Proposed Class Satisfies the Rule 23(a) Requirements.

#### 1. Numerosity

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). Here, the Settlement Class consists of approximately 95,000 persons. The large number of persons in the Settlement Class renders joinder impracticable. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010).

#### 2. Commonality

Commonality is satisfied if "there are any questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *see Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012) (noting all that is required is a "single significant question of law or fact."); *Hanson*, 2018

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

WL 3630284 at *2 (same). The inquiry regarding commonality involves whether Plaintiff can show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Here, there are numerous questions of law and fact that are common to all Class Members claims, including, *e.g.*, whether Lamps Plus's policies and practices regarding its use of "Compare At" prices for its Exclusive Products violated the CPA, and whether all Class Members were exposed to the same pricing and sales policies and practices.

### 3. Typicality

Typicality is satisfied if the class representative's claims or defenses are typical to those of the Class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416, 417 (9th Cir. 2019). The Ninth Circuit applies the typicality requirement liberally: "representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff's claims are typical to those of the Class because they are based upon the same facts and the same legal and remedial theories as those of the Class, and Plaintiff is not subject to any unique defenses. Indeed, Plaintiff, like every other Class Member, is a customer of Defendant's stores and/or website, and seeks all available relief for himself, under the same law, as for every other Class Member.

### 4. Adequacy

Adequacy is satisfied if the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit utilizes two questions to determine legal adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff Chen is an adequate representative of the Class, as he shares interests with the Class and has pursued those interests vigorously. Plaintiff has devoted time and effort to prosecuting the Class claims, including gathering and organizing his documents, providing information to Plaintiff's Counsel and assisting with investigating the case.

Also, Class Counsel is experienced in consumer class actions and is well-qualified to represent the Class. Class Counsel has been appointed class counsel in several similar false discount advertising cases, including the very first false reference price lawsuit to be certified as a class action, *Brazil v. Dell Inc.*, No. C-07-01700 RMW (N.D. Cal. 2011). Hattis Decl. ¶¶ 4-5. Collectively, Class Counsel has represented millions of consumers in actions in various federal and state courts, recovering over $40 million for their clients. *Id.* Class Counsel continues to investigate and prosecute complex consumer protection class actions, and currently serves as plaintiffs' counsel in several proposed deceptive advertising class cases in California and Washington courts including cases against Comcast Corporation, AT&T Mobility LLC, and Nordstrom, Inc. *Id.* at ¶ 6. Class Counsel is also currently co-counsel with the City Attorney of Los Angeles in government prosecutions for false reference price advertising against four of the largest department stores in the United States, specifically Macy's, Inc., J.C. Penney Corporation, Kohl's Department Stores, Inc., and Sears, Roebuck and Co. *Id.* at ¶ 7. In sum, Class Counsel is very experienced in false discount advertising cases similar to the one at hand, and is well-qualified to represent the Class in this proposed class action.

Thus, adequacy is met.

### B. The Proposed Class Satisfies the Rule 23(b)(3) Requirements.

Class actions under Rule 23(b)(3) must also satisfy the following two requirements, which are commonly referred to as "predominance" and "superiority," respectively: (1) "the questions of law and fact common to class members predominate over any questions affecting only individual members, and" (2) "that a class action is superior to other available methods for

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff has satisfied both of these requirements.

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Achziger*, 772 F. App'x at 418 (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)). Although predominance is inherently related to commonality in that it assumes a prerequisite of common issues of law and fact, "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id*.

Individualized damage variations among class members do not by themselves preclude a finding of predominance. *See Hanson*, 2018 WL 3630284 at *3; *see also Achziger*, 772 F. App'x at 418 ("We conclude that the district court abused its discretion by giving more weight to potential individual damages disputes than common questions of liability."); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."). First, a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings. *See Taha v. Cty. of Bucks*, 862 F.3d 292, 309 (3d Cir. 2017); W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:54, 206-08 (5th ed. 2012). Second, a plaintiff class may prove classwide damages through use of representative evidence and statistical modeling, provided that the methodology offered is mathematically sound and comports appropriately with the plaintiffs' liability theory. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047-49 (2016); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-37 (2013). Apportionment and disbursement of the classwide damages to individual class members can be accomplished at a later stage without undermining the propriety of class certification during earlier phases. *See Tyson Foods*, 136 S. Ct. at 1049–50.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

The predominate legal and factual issues in this litigation concern the legality of Lamps Plus's policies and practices regarding its use of "Compare At" reference prices on its proprietary products sold only by Lamps Plus; whether Lamps Plus's acts or omissions proximately caused Plaintiff's injuries; and proof of damages. These issues can be resolved on a classwide basis, with little to no emphasis on unique circumstances of Plaintiff or any Class Member. Also, the potential legal remedies available to Plaintiff and the Class are identical. These issues predominate, and the Settlement proposed by Plaintiff ensures that individualized damage calculations do not pose a problem. Every Class Member who submits a valid Claim Form will receive their choice of a Voucher or $14 in the form of a check, with no fixed settlement fund capping relief. This approach is objective, easy to calculate, and offers fair and equal treatment to all Class Members.

## 2. Superiority

Superiority examines whether the class action device "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most effective means for resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010) (citation and internal quotation marks omitted).

Class resolution in the settlement context is particularly superior to other available methods for the fair and efficient adjudication of the controversy. *Hanlon*, 150 F.3d at 1023. First, manageability of the class action device is not a concern in the settlement context. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Second, the alternative method of resolution would be potentially thousands of individual claims for a relatively small amount of damages (less than $500). *See Hanlon*, 150 F.3d at 1023. Thus, if pursued, "these claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery." *Id*. In such situations, a class action is the clearly preferred method of resolution.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## VI. PROPOSED SCHEDULE

The implementation schedule proposed by the Parties follows a specified sequence for the relevant dates and deadlines, as set out in the Settlement. This schedule is incorporated in the Proposed Order Granting Preliminary Approval of Class Action Settlement submitted herewith. The proposed implementation schedule is reasonable and feasible, and will provide adequate time to carry out the various steps required by law for notice, claim form completion, opt-out and objection rights, challenges to factual information regarding the Class Members, issuance of settlement benefits, and making the payments involved.

Thus, Plaintiff respectfully requests that the Court adopt the proposed implementation schedule set forth in the Proposed Order Granting Preliminary Approval of Class Action Settlement. To accomplish the proposed schedule, Plaintiff respectfully requests the Final Approval Hearing be scheduled a minimum of **ninety (90) days** from the date the Court enters the Proposed Order Granting Preliminary Approval of Class Action Settlement.

## VII. CONCLUSION

For all of the reasons set forth above, the Court should certify the proposed Class for the purpose of settlement only, grant preliminary approval to the proposed Settlement, approve the proposed notice plan, and schedule a final approval hearing.

DATED this 27th day of January, 2020.

HATTIS & LUKACS

By: */s/ Daniel Hattis*
Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com

Hattis & Lukacs
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
Phone 425.233.8628
Fax 425.412.7171

Attorneys for Plaintiff Weimin Chen
And the Proposed Class

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 25
19-CV-00119-MJP

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States of America that on the 27th day of January, 2020, the document attached hereto was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in the matter.

DATED this 27th day of January, 2020.

*/s/ Daniel M. Hattis*
Daniel M. Hattis, WSBA No. 50428

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com