UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEIMIN CHEN,<br>for Himself, as a Private Attorney<br>General, and/or On Behalf Of All<br>Others Similarly Situated,<br><br>                      Plaintiff,<br><br>   v.<br><br>LAMPS PLUS, INC.,<br>and DOES 1-20, inclusive,<br><br>                  Defendants. | No. 2:19-cv-00119-MJP<br><br>**PLAINTIFF'S MOTION<br>FOR FINAL APPROVAL OF<br>CLASS ACTION SETTLEMENT**<br><br>FAIRNESS HEARING:<br>AUGUST 11, 2020, 10:00AM |

# I.    INTRODUCTION

Plaintiff Weimin Chen moves under Federal Rule of Civil Procedure 23(e) for final approval of the proposed class action settlement entered into with Defendant Lamps Plus, Inc. ("Lamps Plus" or "Defendant"). The Court preliminarily approved the Settlement Agreement[1] between Plaintiff Chen and Lamps Plus on February 25, 2020. (Dkt. 33). Since then, the Parties successfully implemented the Court-approved Notice Program and have received a wholly positive response to the Settlement from the Settlement Class Members. Plaintiff now moves the Court to: (1) certify the Settlement Class under Rules 23(b)(3) and 23(e) for settlement purposes; (2) approve the Settlement as fair, reasonable, and adequate; and (3) enter the Parties' proposed Final Approval Order and Judgement, filed herewith.

# II.    PROCEDURAL AND FACTUAL BACKGROUND

## A.    History of the Litigation

Plaintiff Weimin Chen filed this class action in the Superior Court of Washington for King County on January 4, 2019. (Dkt. 1-1). On January 28, 2019, Defendant Lamps Plus subsequently removed this action to the United States District Court for the Western District of Washington. (Dkt. 1).

In his complaint, Plaintiff Chen alleges that Lamps Plus violated the Washington Consumer Protection Act, RCW 19.86 ("CPA"), by advertising fictitious "Compare At" prices on its proprietary and exclusive products ("Exclusive Products"), which are typically over 30% higher than the actual selling prices. Complaint ¶ 2. Plaintiff Chen alleges that, under Washington law, a "Compare At" price must be the price at which other retailers are offering that same product for; thus, the "Compare At" prices are false, deceptive, or misleading because Lamps Plus's Exclusive Products are never sold at the higher "Compare At" price by

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as set forth in the Settlement Agreement and Release, which is attached as Exhibit 1 to the Declaration of Daniel Hattis in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Hattis Decl."). The Settlement includes, as exhibits, the proposed Preliminary Approval and Provisional Class Certification Order (Ex. A), Full Notice (Ex. B), Email Notice (Ex. C), Mail Notice (Ex. D), Claim Form Version 1 (Ex. E), Claim Form Version 2 (Ex. F), proposed Order Granting Final Approval of Class Settlement (Ex. G), and proposed Final Judgment (Ex. H). Hattis Decl. § 20.

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 2
19-CV-00119-MJP

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

other retailers since the products are exclusive to Lamps Plus. Complaint ¶¶ 3–4. Plaintiff Chen brought this action to recover damages under the CPA and injunctive relief. Complaint ¶¶ 86–105. On February 4, 2019, Lamps Plus filed its Answer and denied liability of any kind. (Dkt. 8).

**B.     Plaintiff's Counsel Thoroughly Investigated Claims Against Lamps Plus.**

Prior to filing this Action, Plaintiff's Counsel conducted a thorough investigation into Lamps Plus's pricing practices. Hattis Decl. ¶ 10. Plaintiff's Counsel has invested considerable time and expense into its Rule 11 pre-filing investigations. Specifically, Plaintiff's Counsel has created a bespoke evidence preservation software which "scrapes," stores, and analyzes the prices at which various retailers offer their products for sale online and captures daily screenshots of the product webpages. Hattis Decl. ¶ 9. Using this software, Plaintiff's Counsel tracked over five hundred Lamps Plus products on a daily basis for a period of seven months prior to filing this Action. Hattis Decl. ¶ 10. Additionally, Plaintiff's Counsel visited a Lamps Plus store in Washington to document and record photographic evidence of Lamps Plus's in-store advertising, discounting, pricing, and sales practices. Hattis Decl. ¶ 13. This in-store evidence demonstrated that Lamps Plus's online and in-store advertising and pricing practices were virtually identical. Hattis Decl. ¶ 13. Plaintiff's Counsel brought this action because the data supported Plaintiff's claims.

After filing this Action, Plaintiff's Counsel continued monitoring Lamps Plus's pricing practices through the use of their product-tracking software. Hattis Decl. ¶ 14. Plaintiff's Counsel also engaged in meaningful discovery, requiring Lamps Plus to produce nearly 6,000 pages of documents relating to its online and in-store advertising, discounting, pricing, and sales practices. Hattis Decl. ¶ 15. Lamps Plus also produced hundreds of thousands of sales transaction records regarding the purchases of over 95,000 customers in the state of Washington. *Id.* Plaintiff's Counsel reviewed the entirety of these documents in anticipation of several impending depositions that were to take place absent this settlement agreement. *Id.* Through this discovery, the Parties were able to better understand the strengths and weaknesses of Plaintiff's claims and it allowed the Parties to more readily reach an agreement to settle the

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

claims. *Id.*

**C. Negotiations and Settlement**

The proposed settlement is the result of good faith, arm's-length negotiations. In late February 2019, the Parties began discussing possible settlement. Hattis Decl. ¶ 16. On March 18, 2019, the Parties participated an in-person mediation in Los Angeles before Robert A. Meyer of JAMS. Hattis Decl. ¶ 17. Prior to the mediation, the Parties exchanged detailed confidential mediation statements setting forth their respective positions as to liability and damages. Hattis Decl. ¶ 17. While the Parties were unable to reach an agreement at the mediation, progress was made. Over the next six months, the Parties continued to engage in extensive negotiations by email and phone, ultimately reaching an agreement on the core terms of monetary and injunctive relief necessary to resolve the case on a class-wide basis on August 9, 2019. Hattis Decl. ¶ 18. The Parties did not agree upon attorneys' fees, costs, or expenses prior to reaching an agreement on the essential terms of the settlement. Hattis Decl. ¶ 18. The Parties then formalized the terms of their proposed settlement in a full settlement agreement, which is attached as **Exhibit 1** to the Declaration of Daniel Hattis.

**D. Preliminary Settlement Approval and Implementing the Notice Program**

On January 27, 2020, Plaintiff filed his unopposed motion for preliminary approval of the Settlement, provisional certification of the Settlement Class, and approval of the proposed Notice Program. (Dkt. 30). The Court granted the motion and issued a Preliminary Approval Order on February 25, 2020, provisionally certifying the proposed Settlement Class and designating Hattis & Lukacs as Class Counsel. (Dkt. 33) (hereinafter, "Order").

**III. THE SETTLEMENT**

**A. The Settlement Class**

In the Order, the Court provisionally certified the following "Settlement Class" under Rule 23(b)(3), defined as:

> All Lamps Plus customers who purchased in the State of Washington from a Lamps Plus retail store or the Lamps Plus website from January 4, 2015, through the date of preliminary approval, one or more Lamps Plus branded, trademarked or otherwise proprietary merchandise which Lamps Plus advertised with a "Compare" or "Compare At" reference price. Excluded from the Class are Lamps

Plus's Counsel, Lamps Plus's officers, directors and employees, and the judge presiding over the Action.

Order at 3; *see also* SA § 2.1.9.

The Class is believed to include approximately 78,797 individuals. Declaration of Angie Birdsell ("Birdsell Decl.") ¶ 6; Hattis Decl. ¶ 15.

## B. Benefits to the Settlement Class

Under the Settlement Agreement, Lamps Plus will award each Class Member who submits a complete, valid, and sufficient Claim Form on or before the Claim Response Deadline his or her choice of either: (a) one settlement check (a cash payment) in the amount of $14; or (b) one Voucher with a value of $20 that may be used for the purchase of any item at a Lamps Plus retail location or through Lamps Plus's website. SA §§ 2.2.1, 2.3.4.

Lamps Plus has also agreed to several material practice changes. Within a reasonable time, Lamps Plus will revise its in-store product labels and website descriptions to remove the "Compare At" terminology on its price tags and pricing placards for its proprietary products in Washington state. SA § 2.2.3. Lamps Place may use terminology such as "Comparable Value" and/or other similar language to convey the price at which similar goods are offered for sale. *Id.* Moreover, within a reasonable time, Lamps Plus shall remove the "Low Price Guarantee" language and link on website product pages for Lamps Plus house-brand and/or exclusive products (although the "Low Price Guarantee" may remain with respect to non-exclusive products). *Id.* Lamps Plus will also display signage in its Washington state retail stores describing the meaning of "Comparable Value" at or near the entrance to each store and in a location where other store policies are posted. *Id.*

## C. Release of Claims

In exchange for the consideration above, Plaintiff and the Class Members who did not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from:

> [A]ll manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which the Class

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Members have or may have, arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to in the Complaint, or any preceding version thereof filed in the Action, including, but not limited to, any and all claims related in any way to the advertisement of reference prices by Lamps Plus, Inc. or any of its subsidiaries or affiliates

SA §§ 2.1.11, 2.2.9.

In addition to the releases made by the Class Members set forth in Section 2.2.9 above, effective upon entry of the Judgment, Plaintiff Chen shall also provide Defendant a general release of all past and present claims, known or unknown. *See* SA §§ 2.2.9, 2.2.10.

### D. Attorneys' Fees and Costs, Administration Expenses, and Incentive Award

Separate from the monetary relief available to all claiming Settlement Class Members, Lamps Plus also agreed to pay the entire cost of settlement administration and class notice. These costs have not affected the amount available to Class Members. Additionally, Lamps Plus agreed to pay up to $305,000 to cover: (1) any Court-approved incentive award to Plaintiff, not to exceed $5,000; and (2) any Court-approved attorneys' fees, costs and expenses, not to exceed $300,000. SA §§ 2.2.4, 2.2.5. The effectiveness of the Settlement Agreement is not contingent on the Court's awarding of the full amounts of the requested incentive award or attorneys' fees, costs, or expenses. SA § 2.2.6.

On April 28, 2020, Plaintiff filed a motion for attorneys' fees and costs. (Dkt. 38). And, on May 19, 2020, the Court granted Plaintiff's motion for attorneys' fees and costs. (Dkt. 40).

## IV. RESULTS OF THE NOTICE AND CLAIM PROCESS

### A. The Parties Implemented the Court-Approved Class Notice.

The Parties implemented the Court-approved Class Notice in coordination with the approved Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"). Order at 3; *see also* SA § 2.3.2. Through its records, Lamps Plus was able to identify the email address or mailing addresses of 97,842 Class Members. Birdsell Decl. ¶ 6. On April 9, 2020, Epiq issued the Court-approved Email Notice and Mail Notice to each Class Member's email or mailing address. Of the 78,797 Email Notices issued, 18,064 were undeliverable. Of the 19,045 USPS Mail Notices issued, 1,266 were undeliverable. Birdsell Decl. ¶¶ 10-11.

On June 3, 2020, Epiq sent the court-approved reminder notice via email to the potential

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Class Members. Of the 78,700 Email Notices issues, 19,721 were undeliverable. Birdsell Decl. ¶ 12.

With input from counsel for the Parties, Epiq established a Settlement Website, operational as of April 9, 2020, where Class Members could obtain important information about the Settlement and submit/upload Claim Forms electronically. Birdsell Decl. ¶ 14. As of July 3, 2020, there have been 4,988 unique visitors to the website and 20,813 pages presented. Birdsell Decl. ¶ 14.

Epiq also established a toll-free phone number to provide Class Members with additional information regarding the Settlement. The toll-free number received 6 calls. Birdsell Decl. ¶¶ 15-16.

On June 25, 2020, as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715, Epiq sent a CAFA notice packet (or "CAFA Notice") to 55 federal and state officials sent by United Parcel Service ("UPS"). Such notice was made at the direction of counsel for the Defendants to supplement CAFA notices that had been previously sent by Lamps Plus's counsel on February 21, 2020 to the Attorney General of the United States and the Attorney General of the state of Washington. The June 25, 2020 CAFA Notices were sent to 55 officials, which included the Attorneys General of each of the other 49 states, the District of Columbia, and the United States Territories. Birdsell Decl. ¶ 5.

**B.      Claims, Requests for Exclusions, and Objections**

Under the schedule established by the Preliminary Approval Order, the deadline for Class Members to mail a request for exclusion from the Settlement or an objection to the Settlement was May 25, 2020. The deadline for Class Members to submit a claim was July 8, 2020. Hattis Decl. ¶ 22.

Epiq received a total of 2,879 claims which were filed by the July 8, 2020 deadline. Of these claims, 2,494 (86.6%) requested the $14 cash option, versus 385 (13.4%) requested a $20 voucher usable at the Lamps Plus website or at Lamps Plus retail stores. Birdsell Decl. ¶ 17; Hattis Decl. ¶ 28. This represents a claims rate of 3.7%. Hattis Decl. ¶ 28.

Epiq received two opt-outs from potential Class Members who do not wish to be

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

included in the settlement, a report of which is attached to the Birdsell Declaration. Birdsell

Decl. ¶ 18.  No objections were filed by the deadline. Hattis Decl. ¶ 34

## V.      THE SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit recognizes the "strong judicial policy that favors settlement,

particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*,

516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277

(9th Cir. 1992). The strong preference for class action settlements is precipitated by the

overwhelming uncertainties of the outcome, expense, management, and difficulties in proof

inherent in class action lawsuits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever

increasing burden to so many federal courts and which frequently present serious problems of

management and expense.").

Approval of a class action settlement takes place over three stages. "First, the parties

present a proposed settlement asking the Court to provide 'preliminary approval' for both (a)

the settlement class and (b) the settlement terms." *Rinky Dink Inc. v. Electronic Merchant*

*Systems Inc.*, No. C13-1347, 2015 WL 11234156 *1 (W.D. Wash. Dec. 11, 2015). "Second, if

the court does preliminarily approve the settlement and class, (i) notice is sent to the class

describing the terms of the proposed settlement, (ii) class members are given an opportunity to

object or opt out, and (iii) the court holds a fairness hearing at which class members may

appear and support or object to the settlement." *Id.* "Third, taking account of all of the

information learned during the aforementioned processes, the court decides whether or not to

give final approval to the settlement and class certification." *Id*.

### A.      Standard for Final Approval of the Settlement

The Court's standard inquiry is whether the proposed settlement "is fundamentally fair,

adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998);

Fed. R. Civ. P. 23(e)(2). At the final approval stage, the court considers the settlement in light

of a non-exhaustive list of factors, including:

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of [sic] the proposed settlement.

*Hanson v. MGM Resorts Int'l*, No. 16-CV-001661-RAJ, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018).[2] Additionally, Rule 23(e)(2) requires courts to take into consideration the following factors: (1) whether "the class representatives and class counsel have adequately represented the class"; (2) whether the settlement "was negotiated at arm's length"; (3) whether "the relief provided for the class is adequate"; and (4) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D).

For the reasons set forth below, the proposed Settlement is fundamentally fair, adequate, and reasonable—meeting every criterion for final approval.

**1.    The Strength of Plaintiff's Case Compared to the Risk, Complexity, Costs, and Likely Duration of Further Litigation, Including the Risk of Maintaining a Class Action**

Plaintiff would have faced significant risks in litigating this case through trial and maintaining a class action. As previously discussed in Plaintiff's motion for preliminary approval, numerous novel legal hurdles that have not yet been fully addressed by Washington courts would necessarily need to be overcome in order to recover at trial. From class certification to ultimately proving damages, each stage of the litigation would have presented an untested legal issue under the CPA and, with it, a significant risk of no recovery. There is relatively no caselaw directly addressing the unlawfulness of Lamps Plus's alleged conduct under the CPA. And, to date, not a single such false discounting case under Washington law has been certified as a class action, ended in favorable summary judgment, or gone to trial.

Accordingly, while Plaintiff is confident in the strength of his case against Lamps Plus and the likelihood of success at each stage, the outcome is nonetheless uncertain. And, given all the novel issues presented, the likelihood of one or more lengthy appeals is nearly certain. The degree of uncertainty supports final approval of the proposed Settlement.

---

[2] The seventh factor is neutral here as there is no governmental participant.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

### 2. The Amount Recovered Through Settlement, Method of Distribution, and Equal Treatment of Class Members

This Settlement provides significant relief to the Class and represents a fair, reasonable, and adequate recovery in light of the risks of further litigation. When considering whether "the relief provided for the class is adequate," Rule 23(e)(2)(C) requires the Court to take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(i)-(iii).[3] "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

The Settlement provides substantial relief to the Class. Upon final approval by the Court, all Class Members who have submitted valid claims will receive their chosen option of either: (a) a $14 check (2,494 claimants), or (b) a $20 voucher (385 claimants) to use toward the purchase of any item from Lamps Plus. SA §§ 2.2.1, 2.2.2; Birdsell Decl. ¶ 17; Hattis Decl. ¶ 28.

And, significantly, Lamps Plus has further agreed to cease all of the allegedly deceptive practices set forth in Plaintiff's Complaint: (1) Lamps Plus will no longer use the phrase "Compare At" on price tags or signage in its stores or on its website; (2) Lamps Plus will remove the "Low Price Guarantee" language and link on its website product pages for any of its Lamps Plus exclusive products; and (3) Lamps Plus will display signage at or near the entrance to each of its Washington state retail stores and in a location where other store policies are posted that explains the meaning of its new pricing term, "Comparable Value." SA § 2.2.3.

This relief compares favorably with settlements obtained in similar types of consumer protection cases. *See, e.g.*, *Manouchehri v. Styles for Less, Inc.*, Case No. 14-cv-2521 NLS,

---

[3] Rule 23(e) also requires the Court to consider "any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). Other than the Settlement Agreement, there are no other agreements to disclose. Hattis Decl. ¶ 20.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (approving TCPA settlement of $10.00 cash or $15.00 voucher for class members); *Batmanghelich v. Sirius XM Radio, Inc.,* 09–cv–9190 VBF, Dkt. No. 89 (C.D. Cal. Sept. 15, 2011) (settlement of $5.77 per class member); *Nader v. Capital One Bank, N.A.,* 12–cv–01265 DSF, Dkt. No. 170 (C.D. Cal. Nov. 17, 2014) (settlement of $2.73 per class member); *Cohorst v. BRE Properties, Inc. et. al.,* 10–cv–2666 JM, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) (settlement of $4.70 per class member); *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, at *6 (S.D. Cal. 2014) (granting approval where settlement was 1.7% of possible recovery); *In re LDK Solar Sec. Litig.*, 2010 WL 3001384, at *2 (N.D. Cal. 2010) (granting final approval where settlement was 5% of estimated damages).

Within sixty (60) days of the Final Settlement Date, Lamps Plus, through the Claims Administrator, shall distribute to all Class Members who have timely submitted a complete, valid, and sufficient Claim Form their respective choice of either a $20 Voucher or $14 in the form of a check. SA §§ 2.2.2, 2.3.4. There is no fixed settlement fund capping relief—*all* Class Members who submit a valid Claim Form will receive their reward choice regardless of how many Class Members file a Claim. This approach is straightforward and treats all Claimants identically.

The Settlement Agreement authorizes Plaintiff to seek an incentive award in an amount no greater than $5,000 for his service to the Class in bringing and pressing the lawsuit. SA § 2.2.4. On May 19, 2020, the Court granted Plaintiff's request for his incentive award of $5,000. (Dkt. 40). Plaintiff's incentive award will be paid separate and apart from the Class award. SA § 2.2.6. The Parties negotiated this aspect of the Settlement Agreement only after reaching an agreement on all other material terms of the settlement. Hattis Decl. ¶ 19. In all other respects, the Settlement Agreement treats all Class Members, including Plaintiff, identically and gives all Class Members the same opportunity to receive payments using the same distribution method. *See* SA § 2.3.4.

Incentive awards are fairly typical in class actions and serve "to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Incentive awards are not considered preferential treatment to the plaintiff unless there is a "'significant disparity between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328–29 (C.D. Cal. 2016) ("*Spann II*") (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)).

Here, there is no conflict of interest between Plaintiff and absent Class Members. No matter how the Court ruled on the requested incentive award, the Settlement Agreement would have remained in full force and effect. SA § 2.2.6. Moreover, in approving the requested award, the Court determined that it was reasonable in light of all the circumstances. The basis for such award was purely to compensate Plaintiff for his time and efforts in initiating the lawsuit, staying abreast of all aspects of the litigation, cooperating in discovery, and fairly and adequately protecting the interests of the absent class members. Hattis Decl. ¶ 19. Thus, the award was purely an incentive award and does not constitute preferential treatment.

The Settlement Agreement requires that any award for payment of attorneys' fees, expenses, and costs is subject to proper motion to, and approval by, the Court. On April 28, 2020, Class Counsel filed a motion for attorneys' fees, costs, and expenses in the amount of $300,000. (Dkt. 38). This amount was less than Class Counsel's raw lodestar, which was over $425,000. Hattis Decl. ¶ 12. (Class Counsel also incurred $23,384 in costs which were not reimbursed.) Hattis Decl. ¶ 10. On May 19, 2020, the Court granted Plaintiff's motion for attorneys' fees and costs. (Dkt. 40).

No Class Members filed objections to the Settlement by the June 8, 2020 deadline, and in fact no Class members filed any objections to the Settlement at any time. Hattis Decl. ¶ 34.

Ultimately, 2,879 claims were filed by the 78,603 unique potential Class Members who received direct notice, equaling a claims rate of 3.7%. Hattis Decl. ¶ 29, *see* Birdsell Decl. ¶¶ 13, 17.

This is an excellent result. Based on Class Counsel's experience, consumer class

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

actions in false discount cases involving more than 75,000 persons typically yield a claims rate of between 1% and 3%. Hattis Decl. ¶¶ 30-31.

These factors support final approval of the Settlement.

### 3. The Stage of Proceedings and Extent of Discovery Completed

The parties must have "sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This information can be obtained through formal or informal discovery. *See Clesceri v. Beach City Investigations & Protective Servs.*, *Inc.*, No. CV-10-3873-JLS (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).

As discussed above, Plaintiff's Counsel conducted a thorough investigation of Lamps Plus's pricing practices prior to initiating the lawsuit. And, after filing this Action, Plaintiff's Counsel further engaged in meaningful discovery, reviewing nearly 6,000 pages of documents relating to Lamps Plus's online and in-store advertising, discounting, pricing, and sales practices and hundreds of thousands of sales transaction records regarding the purchases of over 95,000 customers in the state of Washington. Through this discovery, the Parties were able to better understand the strengths and weaknesses of Plaintiff's claims and it allowed the Parties to reach an informed compromise in settling the case. This factor supports final approval of the Settlement.

### 4. Experience and Views of Counsel

As set forth in the Declaration of Daniel M. Hattis, Class Counsel has extensive experience in complex class action litigation, with an emphasis on false discount advertising class actions. Hattis Decl. ¶¶ 4-7. Class Counsel has considered: (1) the complexities of this litigation; (2) the risks and expense of continuing this litigation through discovery, class certification, summary judgment, and trial against Lamps Plus; and (3) the likely appeal(s) by either side at each stage of the litigation. After weighing these against the guaranteed recovery to the Settlement Class, resulting in a comprehensive injunction and meaningful monetary relief, Class Counsel firmly believes the Settlement represents a desirable resolution of this litigation.

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 13
19-CV-00119-MJP

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

### 5. Reaction of Settlement Class Members

The reaction of Settlement Class Members has been overwhelmingly favorable. Of the 78,603 Settlement Class Members that successfully received notice, 2,879 valid claims were submitted, 2 opt-outs were received, and 0 objections were made. The total claims rate was 3.7%. Hattis Decl. ¶ 29, 33; *see* Birdsell Decl. ¶¶ 13, 17, 18. In the experience of Class Counsel, this is on the high-end for claims rates in these types of cases, which typically range from 1% to 3%. Hattis Decl. ¶¶ 30-31.

Moreover, the low opt-out number and zero objections further support class approval of the settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2014 WL 2916871, at *5 (N.D. Cal. June 24, 2014) (finding that 10 opt-outs and one objection in a class of 25,000 members was an "overwhelmingly positive" reaction by the class); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (finding that 3 objections out of 57,630 potential class members favored approval of the settlement by any standard).

In sum, each of the foregoing factors weighs in favor of granting final approval of the Settlement.

### B. Involvement of a Neutral Mediator and Reduced Risk of Collusion

As an additional consideration, the Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. Of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Here, there is no evidence of collusion or fraud. Rather, the Settlement Agreement was

reached only after meaningful discovery, an in-person mediation session before Robert A. Meyer of JAMS, and months of continued negotiations via email and phone. Hattis Decl. ¶¶ 17, 18. Moreover, both Parties were represented by counsel highly experienced in complex class litigation, which allowed for careful consideration of all strengths and weaknesses in order to achieve an efficient resolution. Both Parties were well-versed with the relevant law, the challenges present in calculating damages on a class-wide basis, and the risks of continued litigation and recovery. Accordingly, this consideration also counsels in favor of finding the Settlement to be fair, reasonable, and adequate.

## VI. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Court provisionally certified the Settlement Class in the Preliminary Approval Order, finding that the requirements of Rules 23(a) and (b)(3) were met. *See* Order at 2. Since that time, there have been no developments that would alter this conclusion. The Settlement Class should now be finally certified.

### A. The Proposed Class Satisfies the Rule 23(a) Requirements.

#### 1. Numerosity

Numerosity is clearly established here. Lamps Plus's records confirmed that the Settlement Class consists of approximately 97,842 persons. Birdsell Decl. ¶ 6. Accordingly, the large number of persons in the Settlement Class renders joinder impracticable.

#### 2. Commonality

Commonality is satisfied if "there are any questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012) (noting all that is required is a "single significant question of law or fact."); *Hanson,* 2018 WL 3630284 at *2 (same). The inquiry regarding commonality involves whether Plaintiff can show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Here, there are numerous questions of law and fact that are common to all Class Members claims, including, *e.g.*, whether Lamps Plus's policies and practices regarding its use of "Compare At" prices for its Exclusive Products violated the CPA, and whether all Class Members were exposed to the same pricing and sales policies and practices. These questions suffice to satisfy the commonality prong.

### 3. Typicality

Typicality is satisfied if the class representative's claims or defenses are typical to those of the Class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416, 417 (9th Cir. 2019). The Ninth Circuit applies the typicality requirement liberally: "representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff's claims are typical to those of the Class because they are based upon the same facts and the same legal and remedial theories as those of the Class, and Plaintiff is not subject to any unique defenses. Indeed, Plaintiff, like every other Class Member, is a customer of Defendant's stores and/or website, and seeks all available relief for himself, under the same law, as for every other Class Member.

### 4. Adequacy

Adequacy is satisfied if the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit utilizes two questions to determine legal adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiff Chen is an adequate representative of the Class, as he shares interests with the Class and has pursued those interests vigorously. Plaintiff has devoted time and effort to prosecuting the Class claims, including gathering and organizing his documents, providing

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 16
19-CV-00119-MJP

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1  information to Plaintiff's Counsel and assisting with investigating the case.

2  Also, Class Counsel is experienced in consumer class actions and is well-qualified to

3  represent the Class. Class Counsel has been appointed class counsel in several similar false

4  discount advertising cases, including the very first false reference price lawsuit to be certified

5  as a class action, *Brazil v. Dell Inc.*, No. C-07-01700 RMW (N.D. Cal. 2011). Hattis Decl. ¶¶ 4-

6  7. Collectively, Class Counsel has represented millions of consumers in actions in various

7  federal and state courts, recovering over $40 million for their clients. *Id.* Class Counsel

8  continues to investigate and prosecute complex consumer protection class actions, and

9  currently serves as plaintiffs' counsel in several proposed deceptive advertising class cases in

10  California and Washington courts including cases against Carter's, Inc., Western Digital

11  Corporation, Old Navy LLC, Comcast Corporation, and AT&T Mobility LLC. *Id.* at ¶ 6.

12  Class Counsel is also currently co-counsel with the City Attorney of Los Angeles in

13  government prosecutions for false reference price advertising against four of the largest

14  department stores in the United States, specifically Macy's, Inc., J.C. Penney Corporation,

15  Kohl's Department Stores, Inc., and Sears, Roebuck and Co. *Id.* at ¶ 7. In sum, Class Counsel is

16  very experienced in false discount advertising cases similar to the one at hand, and is well-

17  qualified to represent the Class in this proposed class action. Therefore, the adequacy

18  requirement is satisfied.

19  **B.      The Proposed Class Satisfies the Rule 23(b)(3) Requirements.**

20  Class actions under Rule 23(b)(3) must also satisfy the following two requirements,

21  which are commonly referred to as "predominance" and "superiority," respectively: (1) "the

22  questions of law and fact common to class members predominate over any questions affecting

23  only individual members, and" (2) "that a class action is superior to other available methods for

24  fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff has

25  satisfied both of these requirements.

26  **1.      Predominance**

27  "The Rule 23(b)(3) predominance inquiry asks the court to make a global determination

28  of whether common questions prevail over individualized ones." *Achziger*, 772 F. App'x at 418

(quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)). Although predominance is inherently related to commonality in that it assumes a prerequisite of common issues of law and fact, "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*

Individualized damage variations among class members do not by themselves preclude a finding of predominance. *See Hanson*, 2018 WL 3630284 at *3; *see also Achziger*, 772 F. App'x at 418 ("We conclude that the district court abused its discretion by giving more weight to potential individual damages disputes than common questions of liability."); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."). First, a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings. *See Taha v. Cty. of Bucks*, 862 F.3d 292, 309 (3d Cir. 2017); W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:54, 206-08 (5th ed. 2012). Second, a plaintiff class may prove classwide damages through use of representative evidence and statistical modeling, provided that the methodology offered is mathematically sound and comports appropriately with the plaintiffs' liability theory. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047-49 (2016); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-37 (2013). Apportionment and disbursement of the classwide damages to individual class members can be accomplished at a later stage without undermining the propriety of class certification during earlier phases. *See Tyson Foods*, 136 S. Ct. at 1049–50.

The predominate legal and factual issues in this litigation concern the legality of Lamps Plus's policies and practices regarding its use of "Compare At" reference prices on its proprietary products sold only by Lamps Plus; whether Lamps Plus's acts or omissions proximately caused Plaintiff's injuries; and proof of damages. These issues can be resolved on a classwide basis, with little to no emphasis on unique circumstances of Plaintiff or any Class

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Member. Also, the potential legal remedies available to Plaintiff and the Class are identical. These issues predominate, and the Settlement proposed by Plaintiff ensures that individualized damage calculations do not pose a problem. Every Class Member who submitted a valid Claim Form will receive their choice of $14 in the form of a check, or a $20 voucher, with no fixed settlement fund capping relief. This approach is objective, easy to calculate, and offers fair and equal treatment to all Class Members.

## 2. Superiority

Superiority examines whether the class action device "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most effective means for resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010) (citation and internal quotation marks omitted).

Class resolution in the settlement context is particularly superior to other available methods for the fair and efficient adjudication of the controversy. *Hanlon*, 150 F.3d at 1023. First, manageability of the class action device is not a concern in the settlement context. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). Second, the alternative method of resolution would be potentially thousands of individual claims for a relatively small amount of damages (less than $500). *See Hanlon*, 150 F.3d at 1023. Thus, if pursued, "these claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery." *Id*. In such situations, a class action is the clearly preferred method of resolution. Accordingly, because each Settlement Class Member's claim is common to the Settlement Class and relatively small in amount, a class action is the superior method for efficiently adjudicating Plaintiff's claims.

## VII. THE COURT SHOULD CONFIRM PLAINTIFF AS SETTLEMENT CLASS REPRESENTATIVE AND HATTIS & LUKACS AS CLASS COUNSEL

Plaintiff also requests that the Court formally and finally designate it as the Settlement

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT - 19
19-CV-00119-MJP

Class Representative to implement the terms of the Settlement. As detailed above, Plaintiff will fairly and adequately represent and protect the interests of the Settlement Class. Plaintiff's counsel, Hattis & Lukacs, should be formally and finally appointed as Class Counsel. Rule 23(g) enumerates four factors for evaluating the adequacy of proposed class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims of the type asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

All of these factors militate in favor of appointing Hattis & Lukacs as Class Counsel. The firm has devoted significant time and resources to prosecute this action on behalf of Plaintiff and the proposed Settlement Class. Hattis & Lukacs has extensive experience in class actions, particularly those involving false price advertising. Accordingly, Hattis & Lukacs has already and will continue to adequately represent the interest of the Settlement Class and should be appointed as Class Counsel.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court finally certify the proposed Settlement Class for settlement purposes, finally approve the proposed Settlement as fair, adequate, and reasonable, and enter the proposed Final Order and Judgment submitted herewith.

Respectfully submitted, this 13th day of July, 2020.

HATTIS & LUKACS

By: */s/ Daniel Hattis*
Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com

Hattis & Lukacs
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
Phone 425.233.8628
Fax 425.412.7171

Attorneys for Plaintiff Weimin Chen And the Proposed Class

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States of America that on the 13th day of July, 2020, the document attached hereto was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in the matter.

DATED this 13th day of July, 2020.

/s/ Daniel M. Hattis
Daniel M. Hattis, WSBA No. 50428

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com